IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER CARRON,           ) | |
| )                                           | |
| Plaintiff,           ) | |
| )                                           | |
| v.           ) | Case No. CIV-16-1429-SM |
| )                                           | |
| COMMISSIONER OF SOCIAL           ) | |
| SECURITY ADMINISTRATION,           ) | |
| )                                           | |
| Defendant.           ) | |

## MEMORANDUM OPINION AND ORDER

Jennifer Carron (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Doc. 12.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

I.   **Administrative determination.**

   A.   **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

   B.   **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

   C.   **Relevant findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 11-21;

*see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, first, by disorders of the cervical and lumbar spine, discogenic and degenerative, status post C5-7 fusion, second, by chronic obstructive pulmonary disease, third, by bilateral shoulder impairments, status post January 2010, October 2013, and September 2014 right shoulder arthroscopies, and fourth, by history of bilateral carpal tunnel syndrome, status post January 2003 left and March 2003 right releases;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity (RFC)[2] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she can only occasionally climb ramps and stairs, balance, stoop, kneel and crouch, and crawl, never climb ropes, ladders, or scaffolds, have no more than occasional exposure to irritants, such as dusts, fumes, smokes, gases, and poor ventilation, have no more than occasional exposure to high humidity and wetness, must avoid exposure to temperatures of more than 80 degrees and less than 60 degrees, never work overhead, as to the use of the upper extremities below overhead level, occasionally reach, handle, finger, and feel, and must avoid exposure to industrial type vibration;

(4) could perform no past relevant work;

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

3

(5) could perform jobs that exist in significant numbers in the national economy, such as information clerk, furniture rental clerk, and photofinishing counter clerk; and so,

(6) had not been under a disability, as defined in the Social Security Act, from July 5, 2013 through June 26, 2015.

AR 14-21.

### D. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision. *Id.* at 1-5. The ALJ's decision is thus the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its]

judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

B.  **Plaintiff's claims of error.**

Plaintiff argues (1) the ALJ's step-three determination Plaintiff did not meet or equal Listing 1.02 "is legal error and not supported by substantial evidence," and (2) "[t]he ALJ failed to properly assess [Plaintiff's RFC] and his finding is not supported by substantial evidence but is legal error." Doc. 18, at 8, 12.

C. Analysis.

1. Step-three challenge.

Plaintiff maintains the ALJ provided a "wholly inadequate" discussion of the entire medical record when he concluded her joint impairments did not meeting Listing 1.02. *Id.* at 9. This Listing provides:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by *gross anatomical deformity* (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), *and findings on appropriate medically acceptable imaging* of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
>> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
>> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).

Listing 1.00B2b defines the "inability to ambulate effectively." *Id.* In relevant part, Listing 1.00B2b provides:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined

6

> generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school . . . .

*Id.* at Listing 1.00B2b.

And, the listing defines the "inability to perform fine and gross movements":

> c. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; that is, an impairment or impairments that interfere very seriously with the claimant's ability to independently initiate, sustain, or complete activities.1 In order to use his or her upper extremities effectively, a claimant must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living . . . .

*Id.* at Listing 1.00B2c.

"The Listing of Impairments . . . describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an [adult] from doing any gainful activity . . . ." 20 C.F.R. §§ 404.1525(a), 416.925(a). It is Plaintiff's "step three burden to present evidence establishing her impairments meet or equal listed impairments . . . ." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

7

As Plaintiff notes, the ALJ gave great weight to the state agency examiner's "conclu[sion] that no listing is met or equaled." Doc. 18, at 8-9. The balance of the ALJ's consideration follows:

> Particular attention was given to medical listing 1.02 for major dysfunction of a joint. However, the specified criteria required of the listing was not demonstrated by the available medical evidence. Specifically, the listing requires *gross anatomical deformity* and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), *and finding on appropriate medically acceptable imaging* of joint space narrowing, bony destruction or ankylosis of the affected joint. The listing also requires involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively as defined in 1.00B2b. In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b.

AR 15 (emphasis added).

As the Commissioner points out, Plaintiff identifies no "'gross anatomical deformity'" in any of her weight-bearing joints in her legs." Doc. 22, at 7. Similarly, the record does not support any "gross anatomical deformity" in her left arm. *See id.* Dr. Stephen Wilson assessed Plaintiff with "anatomical abnormalities" in her left shoulder, but, as the ALJ noted, made no mention of diagnostic imaging. AR 754, 19.

Plaintiff claims the ALJ's conclusion is error, citing her subjective complaints of pain and her symptoms. Doc. 18, at 9-11. She points to her "continued neck pain and problems," "ongoing chronic pain management," her

8

"limited range of motion and headaches." *Id.* at 9. She outlines the "problems and symptoms" she had, and contends imaging "confirmed her [disc disease] problems," and "her problems affect her gait." *Id.* at 10. She notes her shoulder issues, her carpal tunnel surgery, her rotator cuff injury, and outlines her testimony regarding her inability to lift, sit for very long, pain in walking, need to lie down two-to-three times a day to relieve pain, her neck pain, and her pain in both hands. *Id.* She also points to her testimony regarding her inability to grip varying sizes of objects, her inability to perform chores due to pain, her limited ability to cook without hurting herself, and her inability to sleep or dress due to pain. *Id.* at 11.

Elsewhere in the decision, the ALJ discounted Plaintiff's credibility. AR 17. While "[p]ain or other symptoms may be an important factor contributing to functional loss," the ALJ must "evaluate the intensity and persistence of such pain or other symptoms carefully in order to determine their impact on the individual's functioning under these listings." 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.00B2d. The ALJ found "there are several reasons why [Plaintiff's] allegations of debilitating symptoms should be deemed to be not wholly credible." AR 17; *Fischer-Ross*, 431 F.3d at 733 ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed

9

impairment."). And Plaintiff does not challenge the ALJ's credibility assessment.

The ALJ continued:

First, the claimant has described daily activities which are significantly limited to the extent one would not expect, given the treatment and diagnoses in the medical evidence of record. Second, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled. Lastly, although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The ALJ then evaluated each of Plaintiff's alleged physical limitations, and found "the medical evidence of record does not support [Plaintiff's] allegations . . . ." AR 17 (rotator cuff), 18 (significant back pain), 18 (chronic obstructive pulmonary disease); *see* 20 C.F.R §§ 404.1525(c)(3), 416.925(c)(3).

Finally, while challenging the medical evidence the ALJ relied upon, she offers none to support her argument she meets Listing 1.02. Doc. 18, at 11. Substantial evidence supports the ALJ's conclusion, and any error with respect

to the adequacy of his analysis with respect to Listing 1.02 is harmless. *Fischer-Ross*, 431 F.3d at 733.

## 2. The ALJ properly assessed Plaintiff's RFC and substantial evidence supports it

Plaintiff challenges the ALJ's formulation of the RFC, contending it ignored her treating physician's ten-pound lifting restriction, that her reaching ability was more limited, she was not permitted unscheduled breaks, and that "the ALJ gives no consideration to the numerous medications Plaintiff takes, including narcotics such as Lortab." Doc. 18, at 13. As a result, she argues, the ALJ's hypotheticals to the vocational expert omitted these limitations. *Id.*

To start, the treating physician she attributes the lifting restriction to was a nurse practitioner. AR 720, 722. The court notes that under the regulations, nurse practitioners are categorized as "other sources" and not "acceptable medical sources." *Nichols v. Astrue*, 341 F. App'x 450, 453 (10th Cir. 2009); 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see also Crowder v. Colvin*, 561 F. App'x 740, 744 (10th Cir. 2014) (quoting Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3 (Aug. 9, 2006)). That said, the ALJ, gave some weight to Dr. Robert A. German's assessment and his finding of maximum medical improvement with respect to Plaintiff's lifting and reaching. AR 19, 388. The ALJ also relied upon the second state agency physician, who reviewed Dr. German's treatment notes. *Id.* at 74-85. That second state agency physician

11

concluded Plaintiff could perform light work with some further restrictions. *Id.* at 83-84. Beyond suggesting the ALJ "rel[ied] on only those medical records[ that] support his finding," Plaintiff raises no challenge to the ALJ's conclusion that the "medical evidence of record does not support the allegation of [Plaintiff.]" Doc. 18, at 11; AR 17.

As to the reaching restrictions, the ALJ included these in the RFC. AR at 16 ("never work overhead" and occasionally reach using upper extremities below overhead level). And the court agrees Plaintiff presents only a "cursory and vague" assertion that the ALJ neglected to consider her "numerous medications." Doc. 22, at 12; Doc. 18, at 12.

Regarding the alleged legal error with respect to the ALJ's questions to the vocational expert (VE), "[t]he ALJ is required to include in a hypothetical inquiry to the VE all *and only* those impairments the ALJ properly finds borne out by the evidentiary record." *Johnson v. Colvin*, 640 F. App'x 770, 776 (10th Cir. 2016) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)). Plaintiff also cites to the ALJ's hypothetical questions to the VE that included additional, unscheduled breaks, which the VE responded would "eliminate employment." Doc. 18, at 14. But the ALJ was not required to accept the VE's answer to hypothetical questioning that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record." *Bean v.*

*Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). Plaintiff fails to demonstrate reversible error.

## III. Conclusion.

The court affirms the Commissioner's decision.

ENTERED this 2nd day of October, 2017.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE